IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| DONNA A.,[1] § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL SECURITY, § <br> § <br> Defendant. § | CIVIL ACTION NO. 5:22-CV-111-H-BQ |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Donna A. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Commissioner's decision denying her applications for supplemental security income and disability insurance benefits. Under *Special Order 3-251*, the United States District Judge referred this case to the undersigned United States Magistrate Judge for further proceedings. The parties did not unanimously consent to proceed before a magistrate judge. The undersigned has considered the parties' briefing and arguments, the administrative record, and applicable law, and in accordance with the order of referral, makes the following findings, conclusions, and recommendations to the United States District Judge. Specifically, the undersigned recommends that the district judge vacate the Commissioner's decision and remand the case for further administrative proceedings.

### I.    Statement of the Case

On January 30, 2020, Plaintiff applied for disability insurance benefits and supplemental security income benefits, alleging a disability onset date of December 15, 2016. Tr. 13. The Social Security Administration (SSA) denied her applications on May 5, 2020, and again upon

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

reconsideration on October 22, 2020. *Id.* Represented by counsel, Plaintiff appeared telephonically and testified before an administrative law judge (ALJ) on August 2, 2021. Tr. 13, 28–39. An impartial vocational expert (VE) also appeared and testified. Tr. 13, 28–39.

The ALJ determined on August 26, 2021, that Plaintiff was not disabled because she is capable of performing past relevant work. Tr. 10–27. The Appeals Council denied Plaintiff's request for review. Tr. 1. Consequently, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II. Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2020); *see, e.g., Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). If substantial evidence

supports the Commissioner's findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4); *see Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III. Facts

Plaintiff claims she became disabled on December 15, 2016, due to myriad health issues. Tr. 13, 15–17. She was 57 years old on the alleged onset date and is now 63. Tr. 22. Plaintiff

has a seventh-grade education and her past relevant work as a hospital cleaner is categorized as "unskilled." Tr. 22, 31–33.

At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Tr. 15. The ALJ found at step two that Plaintiff has the following severe impairments: bilateral knee osteoarthritis, hypertension, degenerative joint disease of the lumbar spine, cervical stenosis, and osteoarthritis. *Id.* The ALJ also concluded that Plaintiff has several medically determinable impairments that are not severe, including hyperlipidemia, anxiety disorder, bipolar disorder, and borderline intellectual functioning. Tr. 16–17. Despite the existence of severe impairments, the ALJ found at step three that Plaintiff does not have an impairment or combination of impairments that meet or equal the Listings in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 17–18 (discussing Listings 1.15 and 1.18).

The ALJ then assessed Plaintiff's residual functional capacity (RFC) and found that, although Plaintiff has "impairments that limit her," she can "perform the full range of medium work." Tr. 18–21 (emphasis omitted). The ALJ therefore concluded that Plaintiff could perform past relevant work as a hospital cleaner. Tr. 22. Alternatively, the ALJ found that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy based on Plaintiff's RFC and with consideration of Plaintiff's age, education, and work experience. Tr. 22–23. Accordingly, the ALJ determined that Plaintiff is not disabled. Tr. 23.

Plaintiff raises two issues on appeal: (1) the ALJ's RFC determination is erroneous because he "failed to perform a function-by-function analysis"; and (2) "[t]he ALJ made his determination with no medical opinions in the record, improperly basing his conclusions solely on his own lay opinion." Pl.'s Br. 1, ECF No. 20.

4

## IV.  Discussion

### A. The Parties' Positions

Plaintiff challenges the ALJ's physical RFC determination.[2] She first contends that the ALJ erred because he failed to perform a function-by-function analysis in accordance with Social Security Ruling (SSR) 96-8p. Pl.'s Br. 7–10. According to Plaintiff, "[t]he Fifth Circuit has consistently held that SSR 96-8p is satisfied when the ALJ's determination is supported by substantial evidence and is based on the function-by-function analysis of the state examiner's medical report." *Id.* at 9. Here, however, Plaintiff argues that the ALJ's "decision must be reversed" because the state "examiners provided no opinions." *Id.* at 10.

In her second point of error, Plaintiff asserts that the record "here is unique due to its complete lack of medical opinions." *Id.* The initial level reviewers failed to provide an opinion as to Plaintiff's RFC, Plaintiff's consultation consisted only of clinical testing, and there are no opinions from any treating providers. *Id.* at 10–11. The record therefore contains only "raw medical evidence" and an "ALJ is not permitted to draw his own medical conclusions regarding an impairment from the medical records alone." *Id.* at 11. As a result, Plaintiff claims that the ALJ erred and his decision "must be reversed" because he "improperly formulated an RFC based on no evidence, much less anything substantial." *Id.* at 12.

The Commissioner counters that the ALJ properly assessed Plaintiff's RFC and substantial evidence supports the finding. Def.'s Br. 5, ECF No. 21. Regarding Plaintiff's first point of error, the Commissioner argues that "the ALJ properly considered the relevant medical and other evidence regarding Plaintiff's physical limitations" and "properly accounted for this evidence by limiting Plaintiff to medium, rather than heavy, work." *Id.* at 7. The Commissioner then

---

[2] Plaintiff's briefing does not address the mental RFC determination. The Court therefore understands Plaintiff as challenging only the physical RFC finding.

challenges Plaintiff's position that the alleged error requires remand "because Plaintiff has pointed to no evidence of physical limitations beyond the restrictions included in the ALJ's RFC assessment," meaning that Plaintiff "failed to demonstrate prejudice from any error the ALJ may have made with respect to SSR 96-8p's function-by-function requirement." *Id.* at 8.

Second, the Commissioner contends that "[a] medical opinion is only one type of evidence that an adjudicator considers when assessing an individual's RFC," and that "the ALJ was not required to derive his RFC finding from a medical opinion." *Id.* at 8–9. According to the Commissioner, substantial evidence supports the ALJ's decision because there is evidence such as "numerous observations throughout the relevant period documenting that Plaintiff had a normal or steady gait and normal strength and range of motion," and the Court should therefore affirm. *Id.* at 9–10.

In reply, Plaintiff argues that the Commissioner attempts to provide an "improper *post hoc* rationalization" to justify the ALJ's "lack of articulated [function-by-function] analysis" by providing his "own explanation as to how th[e] evidence represents a presumed analysis." Pl.'s Reply 2, ECF No. 22. Plaintiff further maintains that "[t]he ALJ's failure to contemplate limitations beyond those strictly exertional, such as handling, reaching, fingering, feeling, kneeling, stooping, crouching, and crawling[,] certainly caused harm to the Plaintiff" because her past work as a hospital cleaner requires "occasional and frequent postural requirements prohibited by Plaintiff's back and knee limitations." *Id.* Moreover, Plaintiff avers that the ALJ's RFC determination is unsupported because an ALJ cannot interpret raw medical evidence and "the record contains *not one* functional opinion or evaluation." *Id.* at 3. She further claims that due to her advanced age and limited education, "Rules 201.01 and 202.01 of the medical-vocational guidelines would both have resulted in a finding of disability for anything less than medium work

had the ALJ proceeded to step five of the sequential evaluation." *Id.* Accordingly, Plaintiff asks the Court to vacate the decision and remand the case for further administrative proceedings. *Id.*

In the undersigned's view, resolution of Plaintiff's second argument obviates the need to address the first. The Court therefore examines the second issue, i.e., whether the record contains substantial evidence sufficient to support the ALJ's RFC determination concerning Plaintiff's medical condition and its impact on her ability to work.[3]

### B. Residual Functional Capacity and the *Ripley* Standard

"Determining a claimant's [RFC] is the ALJ's responsibility, and he has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam) (internal citation omitted). The ALJ must consider "the totality of evidence in the record" including the claimant's "medical history, medical signs and laboratory findings, statements about the impact of symptoms, daily activities, medication, and other treatment." *Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023) (citing 20 C.F.R. § 404.1529(a)–(d)). Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R.

---

[3] Through her first point of error, Plaintiff contends that the ALJ erred because his "decision demonstrates no consideration of her impairments on a function-by-function basis" and the SAMCs similarly "provided no opinions." Pl.'s Br. 9–10. Plaintiff's two arguments likely involve common elements. *See Beck v. Barnhart*, 205 F. App'x 207, 213–14 (5th Cir. 2006) (per curiam) (rejecting similar challenge because "an RFC assessment based in part on the function-by-function analysis of claimant's exertional limitations contained in a state examiner's medical report satisfies . . . SSR 96–8p" (citation omitted)); *McGowen v. Barnhart*, No. 5:02–CV–247–C, 2003 WL 24151722, at *3 (N.D. Tex. Dec. 9, 2003) (remanding where ALJ did not perform a function-by-function analysis and "the record d[id] not contain a clear medical statement regarding [plaintiff's] ability to perform the physical requirements of light work"). The Court, however, need not consider Plaintiff's first point of error because the second requires remand. Nevertheless, to the extent re-evaluation of the record and medical evidence in relation to Plaintiff's RFC requires or involves "function-by-function" analysis of Plaintiff's impairments, the Court has every confidence the ALJ will follow applicable regulations and case law.

§ 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018); *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *5 & n.4 (N.D. Tex. Dec. 4, 2020).

"There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion." *Nic R. v. Kijakazi*, No. 3:22-cv-00106-K-BT, 2023 WL 2529930, at *3 (N.D. Tex. Feb. 21, 2023) (citation omitted), *R. & R. adopted by* 2023 WL 2531492 (N.D. Tex. Mar. 15, 2023). "Even the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination." *Id.* at *5 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) and *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam)). The court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

In *Ripley*, the Fifth Circuit observed that the record included "a vast amount of medical evidence establishing that [the claimant] ha[d] a problem with his back," but it did "not clearly establish" what effect that "condition had on his ability to work." *Id.* Not only were there no "reports from qualified medical experts" as to the claimant's ability to work, but "[t]he only evidence regarding [the claimant's] ability to work came from [his] own testimony." *Id.* at 557 & n.27. As a result, substantial evidence did not support the ALJ's RFC determination because the court could not "determine the effects [the claimant's] conditions, no matter how 'small,' on his ability to . . . work." *Id.* at 557–58 & n.27. Later discussing *Ripley*, the Fifth Circuit reaffirmed that "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam). "Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Id.* The court ultimately held that "the ALJ impermissibly relied on his own medical

8

opinions as to the limitations presented by" the claimant's conditions because there was *"no evidence supporting the ALJ's finding that"* she "could perform light work with [those] conditions." *Id.* at 831–32.

Simply stated, an ALJ may not "independently decide the effects of Plaintiff's ... impairments on her ability to perform work-related activities." *Thornhill v. Colvin*, No. 3:14–cv–335–M, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015). Substantial evidence requires "evidence of the effects the claimant's medical conditions have on her ability to work." *Moreno v. Astrue*, No. 5:09–CV–123–BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010) (citing *Ripley*, 67 F.3d at 557), *R. & R. adopted by* 2010 WL 3025519 (N.D. Tex. Aug. 3, 2010); *see Ripley*, 67 F.3d at 557 (reversing because "the record d[id] not clearly establish ... the effect [the claimant's] condition had on his ability to work").

### C. The record does not clearly establish the effects of Plaintiff's severe impairments on her ability to work.

The ALJ found that Plaintiff suffers from several severe impairments, including bilateral knee osteoarthritis, hypertension, degenerative joint disease of the lumbar spine, cervical stenosis, and osteoarthritis. Tr. 15. At the RFC stage, the ALJ reiterated that Plaintiff has "impairments that limit her" and "may cause pain or other difficulty." Tr. 21. He concluded, however, that Plaintiff's "symptoms may not be accurately reported, may not exist at the level of severity alleged, and/or may have other mitigating factors against their negative impact on [her] ability to engage in work activity." *Id.* As a result, the ALJ "accommodated" Plaintiff's limitations by limiting her to "the full range of medium work." Tr. 18, 21 (emphasis omitted).

The ALJ did not specify which of Plaintiff's claimed ailments are limiting, but his discussion covered Plaintiff's knees, hands, lower back, and hypertension. Tr. 19–21. He seemingly rejected Plaintiff's allegation "that she is unable to use her hands" because she had not

9

reported difficulties with the use of her hands and the medical records generally show she "had no swelling, normal strength, and normal range of motion." Tr. 20 (citing Tr. 208, 174, 178, 397, 537, 565). Conversely, the ALJ found support for Plaintiff's claims about her knees, lower back, and hypertension. He first observed that x-ray and CT results confirm Plaintiff's back and knee problems. Tr. 19–20 (citing Tr. 295–96, 675–76). The ALJ also noted, however, that Plaintiff's treatment notes show she has a normal gait, strength, and range of motion. *Id.* (citing Tr. 525–26, 537, 565, 577, 703). Concerning the hypertension, the ALJ reviewed evidence confirming the condition but opined that there is evidence suggesting Plaintiff "has not always been compliant" with medication and noted that Plaintiff's "overall health was good" at a December 2020 appointment. Tr. 20 (citing Tr. 504, 574, 700, 703).

The ALJ then rejected findings from the non-examining state-agency medical consultants (SAMCs). The SAMC at the initial determination stage considered Plaintiff's impairments non-severe (Tr. 44, 52), which the ALJ found "unpersuasive" and "not supported by the record as a whole." Tr. 21. At reconsideration, the SAMC concluded that there was "insufficient evidence on file to make a determination of disability" (Tr. 62, 71), but the ALJ disagreed with this conclusion and found it unpersuasive. Tr. 22. Because there were no other medical opinions in the record, the ALJ's RFC finding rests only on Plaintiff's testimony and self-reporting history, observation and examination records from treatment notes, and clinical test results. Tr. 19–22.

The problem with this approach is that an ALJ may not "draw his own medical conclusions from some of the data, without relying on a medical expert's help." *Frank v. Barnhart*, 326 F.3d 618, 621–22 (5th Cir. 2003) (per curiam); *see Fitzpatrick v. Colvin*, No. 3:15-CV-3202-D, 2016 WL 1258477, at *8 (N.D. Tex. Mar. 31, 2016) (finding error where the ALJ "attempted to compensate for" the claimant's disorder, "[b]ut other than the opinions of the two SAMCs (which

the ALJ rejected), the record lack[ed] medical evidence that would support a determination that" the claimant could work despite that impairment). An ALJ is free to reject medical opinions provided that he does not "then independently decide the effects of a claimant's impairments on her ability to perform work-related activities." *Greer v. Comm'r of Soc. Sec.*, No. 7:21-cv-00032-O-BP, 2022 WL 4239356, at *7 (N.D. Tex. Aug. 9, 2022) (cleaned up), *R. & R. adopted by* 2022 WL 4240948 (N.D. Tex. Sept. 14, 2022). Indeed, *Ripley* stands for the proposition that an RFC finding is not supported by substantial evidence where the record confirms the existence of a claimant's medical condition, but it does not otherwise make clear what effect that condition has on the claimant's ability to work. *Ripley*, 67 F.3d at 557.

Here, the ALJ relied on evidence that merely describes Plaintiff's conditions rather than demonstrating her ability to work despite those impairments. *See Jim S. v. Saul*, No. 3:18-CV-2179-BH, 2019 WL 4694943, at *9 (N.D. Tex. Sept. 25, 2019) (finding error where the ALJ relied on medical records to assess the claimant's RFC without identifying the medical opinions that were the source of the imposed limitations); *Turner v. Colvin*, No. 3:13–CV–1458–B, 2014 WL 4555657, at *5 (N.D. Tex. Sept. 12, 2014) ("[E]vidence which merely describes Plaintiff's medical conditions is insufficient to support the ALJ's RFC determination."). The record does not clearly establish how Plaintiff's conditions impact her ability to perform medium work and there are no medical opinions to otherwise serve as a foundation for that decision. *See Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-1948-BK, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (concluding that although "the RFC is *ultimately* the ALJ's determination," there was no apparent "*foundational* basis for that decision" where "no treating, examining, or consultative resource reviewed the impact of [p]laintiff's conditions on his ability to work"). It therefore "appears the ALJ relied on his own interpretation of the medical and other evidence, which he may not do."

*Alexander v. Saul*, No. 7:19-cv-00127-M-BP, 2020 WL 4573847, at *4 (N.D. Tex. July 9, 2020), *R. & R. adopted by* 2020 WL 4569034 (N.D. Tex. Aug. 7, 2020). Accordingly, the ALJ erred in making a physical RFC determination without evidence in the record clearly establishing the impact of Plaintiff's impairments on her ability to work.

Nevertheless, reversal is warranted only if Plaintiff was prejudiced by the error. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam). "Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision." *McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008). In similar cases, courts in the Northern District have found that the ALJ's failure to rely on a medical opinion concerning the claimant's RFC necessarily casts doubt on the disability determination. *See, e.g., Kirkland v. Comm'r of Soc. Sec.*, No. 4:22-cv-759-O-BP, 2023 WL 3357597, at *6 (N.D. Tex. Apr. 25, 2023), *R. & R. adopted by* 2023 WL 3362633 (N.D. Tex. May 10, 2023); *Lozano v. Comm'r, Soc. Sec. Admin.*, No. 4:21-CV-1365-P, 2023 WL 2618132, at *6 (N.D. Tex. Mar. 2, 2023), *R. & R. adopted by* 2023 WL 2619311 (N.D. Tex. Mar. 23, 2023); *Graves v. Kijakazi*, No. 3:22-CV-0107-L-BH, 2023 WL 2025247, at *17 (N.D. Tex. Jan. 31, 2023), *R. & R. adopted by* 2023 WL 2025052 (N.D. Tex. Feb. 15, 2023); *Martinez v. Kijakazi*, No. 3:20-CV-3282-BH, 2022 WL 4590577, at *22 (N.D. Tex. Sept. 29, 2022). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error"—here, reversal is required because "it is not inconceivable that the ALJ" may have reached a different conclusion. *Alexander*, 2020 WL 4573847, at *4 (citation omitted). The district judge should remand the case for further administrative proceedings.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court **VACATE** the Commissioner's decision and **REMAND** the case for further administrative proceedings.

## VI. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 17, 2023.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE